IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHAFARRAH CLEMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. A. NO. 21-0485-JB-MU |
| ) | |
| ALAN COHEN, *et al.,* ) | |
| ) | |
| Defendants. ) | |

## **REPORT AND RECOMMENDATION**

On February 4, 2022, Plaintiff filed her amended complaint against Defendants Alan Cohen, Daniel Maroney, the Department of Homeland Security, the Department of Federal Bureau of Investigation, the National Security Agency, and the Central Intelligence Agency of the United States. (Doc. 7). Rather than setting forth facts and claims in coherent, orderly, separately numbered paragraphs (as Plaintiff was specifically ordered to do, *see* Doc. 3), Plaintiff again submitted a rambling litany of alleged facts without clearly setting forth her claims or the basis for her claims. On that same date, Plaintiff filed a Motion to Proceed Without Prepayment of Fees. (Doc. 8). The motion to proceed *in forma pauperis* has been referred to the undersigned for pretrial disposition pursuant to 28 U.S.C. § 636(b)(3) and Local Rule 72.2(c)(1).

**I. Section 1915 Requirements**

Authority for granting Plaintiff permission to proceed without prepayment of fees and costs is found at 28 U.S.C. § 1915:

> (a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that

> includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1); *see Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (affirming the application of § 1915's provisions to a non-prisoner's complaint).

"The *in forma pauperis* statute, 28 U.S.C. § 1915, ensures that indigent persons will have equal access to the judicial system." *Attwood v. Singletary*, 105 F.3d 610, 612-613 (11th Cir. 1997) (citing *Coppedge v. United States*, 369 U.S. 438, 446 (1962)). The opportunity to proceed as an indigent in civil cases, created by statute, is not considered a right but a privilege, *Rivera v. Allin*, 144 F.3d 719, 724 (11th Cir.), *cert. dismissed*, 524 U.S. 978 (1998), and "should not be a broad highway into the federal courts[,]" *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). Thus, "a trial court has broad discretion in denying an application to proceed *in forma pauperis* under 28 U.S.C.A. § 1915, [but] must not act arbitrarily and it may not deny the application on erroneous grounds." *Pace v. Evans*, 709 F.2d 1428, 1429 (11th Cir. 1983) (citing *Flowers v. Turbine Support Division*, 507 F.2d 1242, 1244 (5th Cir. 1975)); *see also Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 & 1306-07 (11th Cir. 2004) ("[A] trial court has wide discretion in denying an application to proceed IFP under 28 U.S.C. § 1915.... However, in denying such applications a court must not act arbitrarily. Nor may it deny the application on erroneous grounds.").

"In order to authorize a litigant to proceed *in forma pauperis*, the court must make two determinations: first, whether the litigant is unable to pay the costs of commencing this action; and second, whether the action is frivolous or malicious." *Boubonis v. Chater*, 957 F. Supp. 1071, 1072 (E.D. Wis. 1997) (citing 28 U.S.C. § 1915(a) &

(e)(2)(B)(i)). "While one need not be absolutely destitute to qualify for *in forma pauperis* status, such benefit is allowed only when a movant cannot give such costs and remain able to provide for herself and her dependents." *Mitchell v. Champs Sports*, 42 F. Supp. 2d 642, 648 (E.D. Tex. 1998) (citations omitted). In *Martinez, supra*, the Eleventh Circuit determined that affidavit statements satisfying the requirement of poverty should be accepted by the trial court "absent a serious misrepresentation and need not show that the litigant is 'absolutely destitute' to qualify for indigent status under § 1915." 364 F.3d at 1307 (citation omitted); *see also id*. ("Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents.").

As to the first prong, Plaintiff stated that she is a single mother of one dependent for whom she provides no support. (Doc. 8 at p. 1). Plaintiff indicated that she has no current income, does not have rental or other financial debts or obligations, and owns a car with a value of $1,000. (*Id*. at p. 2). Plaintiff stated that she receives food stamps and assistance from family members to provide for her basic living needs. (*Id*. at p.3).

While it appears that Plaintiff may meet prong one, a determination of Plaintiff's financial status need not be made here, however, because Plaintiff's complaint is clearly frivolous and fails to state a claim upon which relief may be granted. Pursuant to 28 U.S.C. § 1915(e)(2)(B), a complaint which has been filed *in forma pauperis,* is due to be dismissed if the court determines that the action "is frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." Although *pro se* complaints are held to a less stringent standard than pleadings filed by counsel and are, therefore, liberally construed, *see*

*Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998), a *pro se* plaintiff must allege some facts that would support a legal claim. "An action is frivolous if it is without arguable merit in law or fact." *Austin v. Judge,* 851 F. App'x 173, 174 (11th Cir. 2021) (citing *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2008) (*overruled on other grounds*)). The use of the term frivolous "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v.* Williams, 490 U.S. 319, 325 (1989). "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible…." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Like the failure to state a claim standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint fails to state a claim under § 1915(e)(2)(B)(ii) if it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A district court may dismiss a complaint *sua sponte* without giving the plaintiff notice or an opportunity to respond if "amendment would be futile or the complaint is patently frivolous." *See Surtain v. Hamlin Terrace Found.,* 789 F.3d 1239, 1248 (11th Cir. 2015).

**II. Plaintiff's Claims and Allegations**

Here, even after being given an opportunity to amend her complaint with specific instructions as how to do so, Plaintiff's amended complaint is deficient in almost every respect and does not conform with even the most rudimentary rules of pleading. First and foremost, the complaint is merely a rambling story that does not set forth the nature of any claims against the named defendants, nor does it link particular facts to each of the named defendants or to a particular claim. The complaint seems to attempt to assert claims arising out of an intricate and seemingly unrelated series of events that have

4

occurred in Plaintiff's life during the past ten years, with a particular emphasis on an alleged plot of harassment and surveillance perpetrated upon her first by local law enforcement in Philadelphia, Pennsylvania and the FBI and then continued by other federal agencies, management at the Dillard's Department Store where she worked at the cosmetics counter, landlords, and her own family members.

In summary, Plaintiff alleges that Defendants Alan Cohen and Daniel Moroney were friends of hers when she lived in Philadelphia, Pennsylvania, but that she ended her friendships with them on or around November 2, 2015. (Doc. 7 at p. 3). She alleges that during 2015, they and others, including local law enforcement in Philadelphia and the FBI, targeted, harassed, surveilled, threatened, financially oppressed, and intimidated her. (*Id*. at pp. 3-4). Because she was unable to find or maintain employment, she was forced to return to Mobile, Alabama, her hometown, in May of 2017. (*Id*. at p. 4). She alleges that after moving, she was still being followed by "these agencies." (*Id*.). She alleges that she was constantly attacked, harassed, and surveilled at work and home. (*Id*.). She moved into her aunt's house on January 2, 2018. (*Id*.). She claims that two months later, she started to experience electronic harassment and electromagnetic attack and torture in various ways, which she seems to attribute to targeting by the National Security Agency (NSA) and the Central Intelligence Agency (CIA). (*Id*.). She specifically alleges that she "experienced Microwave Auditory effects, by weapons, radiation, and sounds being transmitted to [her] brain," and she "experienced different types of shock to [her] brain by weapons know to be an energy weapon." (*Id*.). She further alleges that she was sexually assaulted on or about August 15, 2018, as part of her targeting, but does not identify her attacker. (*Id*.). She alleges

5

that she was still being harassed, surveilled, and intimidated in the fall of 2019, when she had a nervous breakdown, was hospitalized, and was incarcerated from November 20, 2019 to May 17, 2020. (*Id*. at pp. 4-5). According to her complaint, after she was released on bond from incarceration on May 17, 2020, the targeting continued. (*Id*.).

She claims that this targeting, surveillance, and harassment violated her First and Fourth Amendment rights, as well as the Universal Declaration of Human Rights. (*Id*. at. 7). She seeks "to be fully compensated and made whole" for the damages she has suffered due to the defendants' actions. (*Id*. at p. 5).

### III. Claims Against the FBI, NSA, CIA, and DHS

Plaintiff's claims against the FBI, the NSA, the CIA, and the Department of Homeland Security (DHS) are due to be dismissed as frivolous and for failure to state a claim on which relief may be granted. First, DHS is entitled to be dismissed because no factual allegations are directed at DHS nor is DHS even mentioned in the body of the complaint. The claims against the remaining three federal agency defendants are due to be dismissed as frivolous because they lack a basis in fact. "Federal courts routinely dismiss allegations that the CIA, FBI, NSA, and other governmental agencies or officials are targeting individual citizens with the intention to track, surveil, monitor, attack, or torture these individuals with directed energy weapons, microwave radiation, satellite technology, and the like as factually frivolous under § 1915, finding that these allegations are fanciful, fantastic, delusional, irrational, or wholly incredible." *Hecker v. Central Intelligence Agency,* Civ. A. No. 21-CV-2701, 2022 WL 196281, at *5 (E.D. Pa. Jan. 20, 2022) (citing *McGinnis v. Freudenthal*, 426 F. App'x 625, 628 (10th Cir. 2011) (finding that the district court did not abuse its discretion in dismissing plaintiff's claim of

6

electromagnetic torture by government and prison officials as frivolous); *Price v. Fed. Bureau of Investigation,* Civ. A. No. 20-3015, 2020 WL 4368063, at *3 (E.D. Pa. July 30, 2020), *aff'd,* 845 F. App'x 106 (3d Cir. 2021) (finding plaintiff's allegations to be factually frivolous where plaintiff alleged that "numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the 'four basic groups of his brain and mental functions'" and "that the use of this 'technology' and 'mind control' has caused him numerous impairments and drove him to criminal and erratic behavior"); *Brown v. United States,* Civ. A. No. 19-154, 2019 WL 3753193, at **2-5 (E.D.N.C. May 10, 2019), *report and recommendation adopted,* 2019 WL 3783271 (Aug. 12, 2019) (dismissing *pro se* plaintiff's claims that the "United States is attacking him with satellite directed energy weapons" because it lacked an arguable basis in fact and rose to the level of the irrational or the wholly incredible); *Rhodes v. Fed. Bureau of Investigation*, Civ. A. No. 16-0093, 2017 WL 1021314, at *4 (N.D. Ind. Mar. 16, 2017) (finding that claims made in plaintiff's complaint of "unspecified actions allegedly taken by unidentified FBI agents related to harassment, torture (using 'directed energy weapons'), theft, destruction of property, defamation, civil rights violations, attempted murder ('by forced suicide'), and misconduct" were frivolous because "the facts alleged [rose] to the level of the irrational or wholly incredible"); *Terry v. United States,* No. ED CV 14-1881-VBF(E), 2014 WL 5106984, at **1-2 (C.D. Cal. Oct. 10, 2014) (allegations that NSA and others were using directed energy weapons to send voices into plaintiff's head were "frivolous, delusional and fanciful").

Plaintiff's allegations were not pled with sufficient specificity, and, in addition, the allegations set forth against the FBI, CIA, and NSA are, more importantly for this analysis, delusional, irrational, wholly incredible, and lacking in any factual basis. Therefore, those claims are due to be dismissed.

## IV. Claims Against Cohen and Maroney

The only federal claims possibly presented against Alan Cohen and Daniel Maroney, former friends of Plaintiff, *see* Doc. 7 at p. 3, are § 1983 claims for violations of the 1st and 4th Amendments. It also appears that Plaintiff may be asserting Pennsylvania state law harassment or stalking claims against Cohen and Maroney. *Id.* Any claims asserted against these two individual defendants are due to be dismissed without prejudice for many reasons; however, the most glaring is the fact that this Court lacks personal jurisdiction over these defendants. "As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims, as a defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." *Agundis v. Rice*, Civ. A. No. 16-0122-CG-B, 2017 WL 1293060, at *4 (S.D. Ala. Feb. 22, 2017) (citations omitted).

"When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure requires that both assertion of jurisdiction and service of process be determined by state amenability standards, or the long-arm statute." C*able/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). Since there is no nationwide service of process provision for § 1983 claims, Rule 4(e) requires the Court to determine this issue under Alabama's long-arm statute. *See id.* at 856; *Riley v.*

8

*Cardozo*, Case No. 3:16-cv-961-J-34MCR, 2017 WL 2799900, at *4 (M.D. Fla. June 28, 2017) (citing *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008)). The limits of long-arm jurisdiction under Alabama's long-arm statute are coextensive with due process under federal law; therefore, the Court need only consider whether its exercise of personal jurisdiction over Cohen and Maroney in this case comports with the Due Process Clause of the Fourteenth Amendment. *See Vascular Ventures, LLC v. American Vascular Access, LLC, C*iv. A. No. 16-00481-KD-B, 2016 WL 7471642, *7 (S.D. Ala. Dec. 7, 2016) (citing Ala. R. Civ. P. 4.2; *Frye v. Smith*, 67 So. 2d 882, 892 (Ala. 2011)).

The bounds of jurisdiction over a non-resident defendant are in accord with due process if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Since *International Shoe*, two categories of personal jurisdiction have arisen: general jurisdiction and specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984).

"General personal jurisdiction arises 'when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts.'" *HomeBingo Network, Inc. v. Chayevsky,* 428 F. Supp. 2d 1232, 1241 (S.D. Ala. 2006) (quoting *Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005) (citations omitted); *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003)). "Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,'

principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. (citation omitted). "A defendant is constitutionally amenable to a forum's specific jurisdiction if it possesses sufficient minimum contacts with the forum to satisfy due process requirements, and if the forum's exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1545 (11th Cir. 1993) (quoting *Int'l Shoe*, 326 U.S. at 316). The non-resident defendant's contacts must meet three criteria to constitute sufficient minimum contacts with the forum:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum …, thus invoking the benefits and protections of its laws." Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there."

*Id.* at 1456 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)) (internal citations omitted).

As discussed above, the plaintiff must show that the non-resident defendant "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities" in order for the Court to exercise specific jurisdiction over the non-resident defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (internal citations omitted). While the Eleventh Circuit does not use "mechanical or quantitative" tests to determine relatedness, it has held that "the causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have 'fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign ….'" *Oldfield v. Pueblo de*

10

*Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009) (quoting *Burger King*, 471 U.S. at 472 (citation omitted; alteration in original). "The defendant's contacts with the forum must be related to the 'operative facts of the controversy.'" *Smarter Every Day, LLC v. Nunez*, Case No. 2:15-cv-01358-RDP, 2017 WL 1247500, *3 (N.D. Ala. Apr. 5, 2017) (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 n.3 (11th Cir. 2008)).

In this case, Plaintiff specifically asserts that the wrongful conduct, harassment, and stalking allegedly committed by Cohen and Maroney took place in 2015 while she was living in Philadelphia, Pennsylvania. Cohen and Maroney appear to be residents of Pennsylvania since the addresses provided by Plaintiff for them are Pennsylvania addresses and all actions attributed to them occurred in Pennsylvania. There are no allegations that these defendants committed any wrongful acts in Alabama or against Plaintiff after she moved to Alabama in 2017. There are, in fact, simply no allegations that link either of these defendants to the State of Alabama at all. Accordingly, Plaintiff has failed to show that this Court can exercise general or specific personal jurisdiction over either Cohen or Maroney. Therefore, all claims asserted against them in Plaintiff's amended complaint are due to be dismissed without prejudice.

## V. Conclusion

Because the Court finds that Plaintiff's claims against the FBI, CIA, NSA, and DHS are frivolous and/or fail to state a claim on which relief may be granted and because the Court lacks personal jurisdiction over Cohen and Maroney, the undersigned Magistrate Judge **RECOMMENDS** that Plaintiff's Motion to Proceed Without Prepayment of Fees (Doc. 8) be **DENIED.** In addition, based upon the foregoing, the undersigned Magistrate Judge finds that the complaint is patently

frivolous and that a second opportunity to amend would be futile. Therefore, it is further **RECOMMENDED** that Plaintiff's amended complaint (Doc. 7) be **DISMISSED, without prejudice.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the **15th** day of **April, 2022**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**